UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID VELEZ,

        Plaintiff,

  v.                                               Case No. 07-C-571

LINN KAMIN, et al.,

        Defendants.

**DECISION AND ORDER**

Plaintiff David Velez, who is represented by counsel, brought this action under 42 U.S.C. § 1983, alleging that the defendant corrections officers assaulted him while he was an inmate at Green Bay Correctional Institution. The plaintiff's allegations ultimately led to the defendants' terminations and criminal prosecutions against them.[1] The defendants moved to dismiss the complaint on the grounds that the plaintiff failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). Plaintiff concedes that he failed to exhaust, but argues that the remedies now cited by the defendant were not available to him; as such, there the exhaustion requirement does not apply. Plaintiff also argues that the defendants failed to comply with local rules governing motion practice and that their motion should be denied on that basis as well.[2] For the reasons given below, the defendants' motion to dismiss will be granted.

---

[1] Despite this, the defendants are represented in this action by the Wisconsin Department of Justice.

[2] Plaintiff concedes that dismissal of his state law claims is appropriate because he failed to file the requisite notice of claims.

At this preliminary stage of the proceedings, the facts must be taken in the light most favorable to the plaintiff. Velez alleges that he had been suffering sexual harassment and assault at the hands of the defendants for a period of time during the summer of 2004. In order to escape their continued assaults, on August 16, 2004 plaintiff smuggled contraband into his cell and then reported himself with the goal of getting sent to disciplinary segregation, where the defendants would not have access to him. Disciplinary proceedings began and plaintiff was placed in "segregation 1" confinement pending his hearing for approximately ten days. He asserts that during that period there were no inmate complaint forms ("310 forms") available to him. On August 26 he was sentenced to 360 days of segregation; he does not state whether he was able to file any inmate complaints while in segregation. The defendants state that the requisite forms are made available on a supply cart that visits segregation cells on Wednesday and Saturday, and in fact two blank forms would have been provided to any inmate upon entering segregated confinement. (Swietkowski Aff., ¶¶ 4, 8.)

In any event, plaintiff appealed his sentence, arguing that he should not have to serve time in segregation because he had really only engineered his discipline as a means of escaping the defendants' assaults. His appeals apparently led to an internal investigation and contact with the Brown County Sheriff's Department. On September 20, Warden Daniel Bertrand wrote to Velez regarding his appeals. Bertrand stated that Captain Brant was the lead investigator as to plaintiff's allegations and that Velez was not to talk to any other staff regarding his allegations. Plaintiff now interprets this missive as a direction to avoid following the standard complaint procedures available to inmates.

**1. Local Rules do not Preclude Granting the Defendants' Motion**

First, Velez argues that the motion should be denied because the defendants failed to identify which rule their motion was based upon and failed to file proposed findings of fact. Civil Local Rule 7.1(a) requires that each motion set forth the particular rule upon which it is made, e.g., Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56. While the defendants' motion did not cite any specific rule, it is captioned "Motion to Dismiss" and its intent can easily be inferred. Though it is perhaps true that the court could simply deny the motion as a matter of course for this technical deficiency, it is unclear what purpose that would serve given that the issue has been fully joined.

The plaintiff is correct, however, that the defendants' motion is something of a hybrid of a motion to dismiss and a motion for summary judgment, given that the defendants filed affidavits (i.e., matters outside the pleadings) for the court's consideration. That is not surprising, however, when the matter raised is exhaustion of administrative remedies. Such a defense is a preliminary matter that should be raised early in proceedings and prior to discovery. Rule 12(b) itself provides that if matters outside the pleadings are to be considered, the motion is treated as a motion for summary judgment; in such a case all that is required is that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). The plaintiff has provided his own affidavit addressing the exhaustion defense, and he does not suggest that any further facts would be "pertinent" to the instant motion. Thus, the motion to dismiss properly may be treated as a motion for summary judgment.

The plaintiff further objects that, if the motion is really a summary judgment motion, then it should be denied because the defendants failed to file proposed findings of fact as required by Civil Local Rule 56.2. Yet when a Rule 12 motion is converted to a Rule 56 motion during the initial stages of a case, as here, it follows that the more strict procedures set forth in Civil Local

3

Rule 56.2 (governing motions for summary judgment) need not be followed. Moreover, the question of exhaustion is a narrow one, and it is difficult to envision the efficacy of proposed findings of fact when the nature of the question is so limited. Ultimately, expedited consideration of a threshold defense like exhaustion is fully warranted, and the plaintiff has not even suggested that his case is somehow prejudiced by consideration of the issue in the manner the defendant has adopted.

**2. Administrative Relief was Available to Velez**

As noted, Velez concedes that he did not file any formal grievances relating to the assaults at issue in this action. The question, as both sides recognize, was whether any administrative procedures were available to Velez following the assaults by the defendants. The applicable procedure is supplied by Wis. Admin. Code DOC §§ 310, and an inmate must make use of the grievance procedure within 14 days of any incident, although, as discussed below, the examiner is allowed to accept late filings for good cause. Wis. Admin. Code § DOC 310.09(6).

I will first address Velez' suggestion that the September 20 communication from Warden Bertrand somehow misled him into thinking that he could not pursue his standard administrative remedies, which he believes rendered the standard administrative process unavailable. It is true that "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees . . . use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). The problem with Velez' assertion is that the incidents about which he would have filed grievances ended as of August 15, 2004, and thus the proper time for exhausting administrative procedures would have expired by the end of that month. As such, any communication the plaintiff received from Warden Bertrand on

4

September 20 – roughly three weeks after the complaint period expired – could have no impact on the determination of whether any complaint procedures were available.

The plaintiff's principal excuse for not exhausting remedies is that he was unable to file any § 310 inmate complaint forms while he was in "segregation 1" during the ten days prior to his disciplinary hearing. He does not suggest that he asked for a complaint forms and was told he could not file one; instead, he asserts that he was "denied access" to the form, a phrase which could mean any number of things, including that he simply never asked for a form and wasn't explicitly offered one. (Velez Aff., ¶ 12.) The defendants state that forms were indeed available. Resolution of this question is not required because the plaintiff does not suggest that he was unable to file any complaint forms *after* his disciplinary hearing of August 26. The last instance of the alleged assaults occurred on August 15, and so even if complaint forms were unavailable to him during the ten days in "segregation 1," he would have been able to file a complaint within the fourteen-day time limit once he was removed from that level of custody after August 26. Moreover, he could have filed a complaint *before* staging his contraband incident and being taken to "segregation 1." *Hoeft v. Wisher,* 181 Fed. Appx. 549, 551, 2006 WL 1373176, **2 (7th Cir. 2006) ("Hoeft offers no explanation as to why he was unable to file his administrative appeal in the seven days prior to his transfer . . .") Ultimately, what Velez alleges is a roughly ten-day period in which he could not file any inmate grievances. The fact remains, however, that administrative procedures were available to him both before or after that ten-day period, and it was his own action that gave rise to the alleged denial of the appropriate complaint forms. Accordingly, even accepting his conclusory assertion that he was "denied" access to the proper forms for ten days, I find unpersuasive his claim that all administrative procedures were unavailable to him throughout this period.

5

In addition to the fact that Velez was not precluded from filing a grievance during the applicable time limits, Velez' failure to file *any* grievances fatally undermines his claim that no remedies were available to him. The premise underlying Velez' argument is that the 14-day time limit for filing a complaint was set in stone; from this it follows that any interference with his ability to file within that period necessarily prejudiced him and would excuse his failure to make use of any administrative procedures. In fact, however, § 310.09(6) allows the prison to accept late filings upon a showing of good cause, and Velez never even attempted to make such a showing. The exhaustion requirement means that a prisoner must make use of the procedures the prison provides "so long as the administrative authority has the ability to take some action in response to the complaint." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). When the procedures provided by the state include an explicit allowance for late filings, the complaint examiner has the authority to "take some action" with respect to the complaint. *Id.* The inmate thus has an obligation to make use of that process and may not simply bypass it and later claim he exhausted all available remedies.

> The time for Hoeft to present additional excuses was when he filed his untimely administrative appeal, not before the district court or this court, although even now Hoeft offers no explanation as to why he was unable to file his administrative appeal in the seven days prior to his transfer, during his time at Bayfield County Jail, or immediately upon his return to Stanley.

*Hoeft,* 181 Fed. Appx. at 550-51.

In *McCoy v. Gilbert,* the Seventh Circuit found that an inmate had failed to exhaust when he failed to file a grievance even though such a grievance would have been untimely under Illinois' prison regulations; like Wisconsin, Illinois allows late filings for inmates who can demonstrate sufficient reason for their tardiness:

> McCoy's argument rests on the premise that [Bureau of Prisons'] twenty-day

6

> window of opportunity permanently closed in mid-November 1995. This premise is faulty; thus, we reject this argument.
>
> McCoy overlooks the crucial fact that, although an inmate must *normally* submit a formal grievance within twenty days of the complained-of events, there is a hardship exception for inmates who are able to demonstrate a valid reason for not meeting the deadline. . . .
>
> Greenville [the prison] had the authority to take some sort of action with respect to a tardy complaint. Therefore, we hold that McCoy must initially have made an attempt to use Greenville's administrative process.

270 F.3d 503, 510 (7th Cir. 2001); *see also Hoeft,* 181 Fed. Appx. at 551, 2006 WL 1373176, **2 ("A prisoner's failure to take advantage of a procedure for reconsidering untimely filings constitutes a failure to exhaust."); *Edmondson v. McCaughtry,* 157 Fed. Appx. 908, 910, 2005 WL 3275692, **2 (7th Cir. 2005) ("the complaint procedures prescribe a remedy for the plaintiff whose submission is untimely through no fault of his own . . . and [plaintiff] failed to pursue that relief.") Accordingly, because Velez was not precluded from filing within the 14-day period, and because he never even attempted to file a grievance after that period under the "good cause" exception, I conclude that Velez failed to exhaust remedies that were available to him.

**2. Exhaustion was Required Despite Relief Later Obtained**

Finally, Velez suggests, apparently in the alternative, that a grievance was not necessary because he had achieved all the relief he wanted through his transfer to segregation, where he was isolated from the defendants. This is a somewhat unusual argument to make, however, given that Velez was then in the process of *appealing* his sentence to segregation. In other words, it is clear that he was *not* satisfied with the relief he obtained at the time, and thus his more recent claim that he somehow obtained all the relief he wanted rings hollow. More importantly, as noted earlier, relief is deemed "available" if there is some recourse the prison could take to remedy the inmate's

7

complaint – even if the remedy is not exactly what the inmate seeks. *Booth v. Churner,* 532 U.S. 731, 741 (2001). For instance, in *Braham v. Clancy,* the Second Circuit rejected an inmate's claim that his transfer to another cell had obviated the need to file a grievance with respect to the conditions in his prior cell:

> Braham did not attempt to file a formal grievance complaining that prison officials had failed to protect him from Burgos. Here . . . had he done so, prison authorities could have taken some action. For example, they could have pursued the remedial measures authorized by Directive 9.6, including "[d]evelop[ing] ... policies and procedures pertaining to the grievance" or disciplining the relevant officers. While the grievance could not have resulted in money damages, other redress was available. We disagree with Braham's contention that, after the cell change, the possibility of relief no longer existed.

*Braham v. Clancy,* 425 F.3d 177, 183 (2d Cir. 2005). Just as in *Braham,* Velez' transfer to segregation did not provide the entirety of relief that was available to him.

Here, it is true that the defendant officers were fired even though the plaintiff did not file a formal grievance, and because Velez obtained relief outside of the formal § 310 grievance process it may be argued that such eventualities demonstrate the futility or mootness of filing a grievance. Yet the officers' discipline resulted only *after* the plaintiff staged his own disciplinary incident and effectuated his transfer to segregated confinement. Thus, the fact that the plaintiff obtained at least partial relief through alternative, informal means without filing a formal grievance does not somehow mean that such relief was unobtainable during the time the plaintiff should have filed a grievance under § 310. Put another way, the plaintiff cannot rely on the occurrence of later events to suggest that relief was not "available" at an earlier time – at the time the grievance should have been filed, relief certainly *was* available. The exhaustion requirement imposes a duty to follow whatever formal state-provided channels were available to Velez, and Velez provides no authority

8

holding that an inmate's failure to follow those channels may somehow be excused by later events.

Although these subsequent events do not speak to the question of what relief was available during the relevant grievance filing period, it is worth noting that the transfer to segregation and the firing of the officers did not provide all the relief that was available to Velez. So long as there is some conceivable form of relief that the prison could provide in response to an inmate complaint, the inmate is under an obligation to file such a complaint. Most obviously, Velez could have obtained relief that did not involve a staged contraband violation and his own discipline – clearly, that was an unsatisfactory form of "relief." He could have been transferred to another prison, or the prison could have installed more security cameras or developed new policies and procedures to prevent future assaults by prison guards. *Braham,* 425 F.3d at 183. In sum, the list of possible remedies is much broader than that suggested by Velez. Thus, even if we were to look at Velez' case with hindsight knowing that the officers were later fired and the assault threat was removed, these eventualities do not represent the only form of relief the prison could have imposed at the time. Because several forms of relief were available to Velez – both before and after he took matters into his own hands – recourse to the inmate grievance system was required.

My conclusion that Velez was required to exhaust administrative remedies is bolstered by the Supreme Court's clear mandate in favor of formal exhaustion rather than the informal and *ad hoc* process Velez pursued. What *Booth* and other cases make clear is that the exhaustion requirement is tied to the *process* rather than any particular result. 532 U.S. at 741. And more recently, the Supreme Court reiterated that the process must be followed *correctly*:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical

9

procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction.

*Woodford v. Ngo,* 126 S.Ct. 2378, 2388 (2006). Following the correct process not only alerts the prison that a problem exists – something Velez arguably accomplished here through his own unique methods – but also gives the prison notice that a potential lawsuit may be in the works. One of the PLRA's goals is to foster informal resolution of prison disputes and reduce the load on federal courts. *Id.* at 2387. When the inmate avoids the filing of a formal complaint – the obvious first step in any potential litigation – the prison has no inkling that it might attempt to ameliorate the situation and convince the inmate to eschew any eventual civil litigation. In addition, the exhaustion requirement in practice requires prisoners to lodge their complaints quickly, thus helping to preserve any evidence and witness accounts.

> Proper exhaustion reduces the quantity of prisoner suits because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court. Finally, proper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved.

*Id.*

In sum, the fact that Velez later obtained some of the relief potentially available through the formal complaint process does not excuse his failure to file a complaint in the first place. Nor does his obtaining of some eventual relief suggest that the exhaustion requirement as applied in this case is some arcane technicality elevating form over substance. According to the plaintiff, he had been subjected to assaults for a period of months, yet he never filed a grievance regarding such incidents.

10

Had he filed formal grievances earlier, he could have prevented future assaults and avoided the need to "set himself up" for a lengthy disciplinary segregation and the resulting administrative appeal. These events only underscore the importance of following available complaint procedures and demonstrate that the disciplinary situation Velez found himself in after August 26 was hardly such satisfactory relief that any formal complaint would have been unnecessary.

For the reasons given above, the defendants' motion to dismiss for failure to exhaust administrative remedies is **GRANTED**, and the case is **DISMISSED**.

**SO ORDERED** this 2nd day of January, 2008.

      s/ William C. Griesbach
William C. Griesbach
United States District Judge